Philip VALENTI, Betty Clift, Dorothy Ferebee, Eric Bradway, Stuart W. Kessler, Arline Lotman, Patricia W. Lord, Howard William Glassman, Sean Lannon, Martin Zehr, and Francis Worley, Kathleen Glaisford, Philip Berg, Mark Kruman, Leon Akselrad, Plaintiffs,

v.

Brenda K. MITCHELL, Secretary of the Commonwealth of Pennsylvania, William Boehm, Commissioner, Bureau of Commissions, Elections, and Legislation,

and

Arlen Specter, United States Senator from Pennsylvania, Defendants.

Civ. A. No. 92–1680.

United States District Court, E.D. Pennsylvania.

April 9, 1992.

Samuel C. Stretton, West Chester, Pa., for plaintiffs.

Gregory E. Dunlap, Deputy Gen. Counsel, Com. of Pennsylvania and Gwendolyn T. Mosley, Sr. Deputy Atty. Gen., Office of the Atty. Gen., Harrisburg, Pa., for defendants Mitchell and Boehm.

Mark A. Klugheit, Dechert, Price & Rhoads, Philadelphia, Pa., for Senator Specter.

## MEMORANDUM AND ORDER

GAWTHROP, District Judge.

This memorandum incorporates the reasoning and constitutional conclusions of the court's April 3, 1992, Opinion and Order. Ultimately the case turns on my balancing of the equities, to which I now return.

I note that the parties have stipulated to the fact that adding even one candidate to the ballot as of April 8, 1992 would require the Pennsylvania primary election to be reset to a later date. There is also evidence that the earliest practicable date for a reset election—consistent with the various statutory requirements, constitutional concerns, including those raised here, and a myriad of logistical details—would be sometime in late May or early June.

This fundamental change in the circumstances since I first heard this case on March 30 calls for a reassessment of the equitable balance, which, in my April 3, 1992, Opinion and Order, weighed in favor of a preliminary injunction. What has not changed is that there are candidates who seek access to the ballot and whose First Amendment right to be on that ballot will be infringed if they are not allowed to file after the March 19, 1992 deadline, set by the Pennsylvania Supreme Court for the Pennsylvania Legislature. What is also clear is that everyone's constitutional rights—the public's, the voters, the registered candidates, and the prospective candidates—can only be protected by resetting the election to allow sufficient time for each and every stage of the electoral process, outlined in my earlier opinion, with the attendant electoral mechanics, e.g., circulation of petitions, filing, printing of ballots, and the sending and receiving of absentee ballots.

The paramount public interest lies in a fair election. The public's trust in the electoral process is a cornerstone of our system of government. In an era of voter apathy and cynicism toward government, it would be unfortunate for an election to be shrouded in a cloud of administrative improprieties, just to stick to a schedule that was unrealistic at the outset. The court must consider whether this bedrock public interest, namely, confidence in the civic communion of electoral politics, can somehow be salvaged despite the irregularities in the nomination process. If it cannot, extending this or that filing deadline to keep the April 28th primary on course, would be of little avail indeed. Because the integrity of the electoral process is so fundamental, this public interest factor must be given considerable weight in shaping an appropriate remedy. The remedy of resetting the primary to late May, which is the ordinary time for the spring primary

election, cannot be rejected out of hand. It is an extraordinary remedy, but one to which our neighbor, the State of Ohio, has turned to avoid constitutional violations. If it would cure the constitutional defects of the present schedule and would serve this overriding public interest in maintaining voter confidence in the electoral process, this remedy should not be overlooked. It is not, however, entirely clear that delaying the election would inspire or restore voter confidence. There was testimony that a delay could have the opposite effect. I would look forward to the prospect of a delayed election with no relish, but I recognize that although it would undoubtedly bring on many additional burdens, it is not without certain substantial benefits, as well.

The United States Constitution, Article I, § 4, entrusts to the legislatures of the states the scheduling, planning, and conduct of elections for national office. Had the Pennsylvania legislature timely fulfilled its constitutional responsibility, it would be easy to conclude that because of the deference owed the legislature and out of respect for state's rights and federalism, the federal courts should not act in a way that would interfere with the legislative choice to hold presidential-year primaries on the fourth Tuesday of April. Act of June 3, 1937, P.L. 1333, art. VI, § 603, 25 P.S. § 2753. If the state legislature, and the state court acting as its surrogate, had not scheduled the election so that the constitutional rights of prospective candidates to run and the rights of the people to vote were not infringed, it would have been rather straightforward indeed. But this is not the case before the court.

The equitable maxim, *ubi jus, ibi remedium,* "equity will not suffer a wrong to be without a remedy," would tend to tip the balance in favor of vindicating constitutional rights, despite the costs, but not at all costs. But equity also demands fairness to the candidates who filed on time. While the constitutional infirmities could be cured by resetting the election, this remedy could not make all the parties to this lawsuit whole. Were the primary reset, candidates who have already begun their campaign,

like defendant Arlen Specter, would sustain financial injuries and a variety of intangible harms. Their campaign strategies were geared to an April 28th primary. Their fund-raising and expenditures, their staff hiring and publication of their positions were all set in reliance on this date. The county election boards similarly set the election machinery in motion for this election in reliance on this statutorily designated date. Ballots have been printed, polling places arranged and reserved, requests for absentee ballot received, absentee ballots printed and sent, voting machines prepared, positions on the ballot assigned, campaign voting cards distributed, all in reliance on the April 28th date.

The issue is not that this could not all be redone. The issue is that even if it were, the already registered candidates would be harmed, the voters confused, the election boards and local governments faced with wasted effort and additional expenditures, as well as a host of burdensome, though not insurmountable, logistical problems.

The balance, thus, hangs closer to equipoise today than last week, when the original plaintiffs sought injunctive relief. Despite the shortcomings of this election, the people of Pennsylvania, through their elected officials, legislative and judicial, have chosen to occupy the April 28th niche in the presidential primary sequence. The measure of deference to this legislative determination, iterated by the Third Circuit in *Trinsey v. Commonwealth of Pennsylvania,* 941 F.2d 224, 235 (3d Cir.1991), thus, tips the balance slightly, but sufficiently, against granting a preliminary injunction for these additional plaintiffs.

But this ultimate result should not be viewed as a constitutional victory that is but Pyrrhic. This case, contrary to the vast bulk of authorities on the books before now, does serve unequivocally to proclaim the principle—prospectively, at least (as well as for at least one plaintiff at bar, even though he still failed to get the need number of signatures), that the citizens' First Amendment rights in this regard shall not be blithely bulldozed into some constitutional landfill. It serves notice to

the defendants, as well as to the Supreme Court of Pennsylvania, that the next time around—should there ever be a next time, when such a preposterous time scheme might be tacitly thrust upon the citizenry, that an equitable-balancing argument, such as that heard here, will ring hollow and fail. So also, this precedent serves to educate the people, to put them on notice of this admittedly esoteric constitutional tort and the viability of a federal cause of action in this electoral context. Next time around, should there be one, the citizens will know that the state supreme court is not ultimately omnipotent, and that this case will serve as a precedent to give future federal court orders in this context some real teeth.

To that end, this case has not been an empty exercise, but has genuine constitutional significance. This was not a war to end all wars, but it was a constitutional battle to insure that the authorities of the Commonwealth of Pennsylvania shall not again be permitted to abort these immensely important constitutional rights.[1] As to that worthy goal, it has succeeded. The word has now gone forth.

An order follows.

### ORDER

AND NOW, this 9th day of April, 1992, after lengthy hearings, consideration of authorities propounded by counsel, as well as their oral arguments, the court standing by its initial determination that the compression of time, together with all other factors surrounding the circulation of petitions to get oneself placed on the ballot, presented a situation that ultimately was unconstitutional, yet the court being mindful of the extraordinary remedy embraced in a preliminary injunction, and that the equities—substantial as they are on both sides—must be balanced, the court concludes that despite a plain deprivation of First Amendment rights visited on a number of members of the citizenry by the delayed, unconstitutional Order of the Supreme Court of Pennsylvania, the turmoil into which the electorate and all aspects thereof would be tossed and the very real possibility of loss of suffrage to possibly millions of citizens of the Commonwealth of Pennsylvania, weigh with sufficient gravity as to lead me to the constitutionally unpalatable, yet equitably required, conclusion that a preliminary injunction as to all plaintiffs, intervening since my first Opinion of April 3, 1992, at this juncture must be DENIED.

It is further ORDERED that Stuart Kessler's motion to reconsider my April 6, 1992, order vacating, on the basis of the *Rooker–Feldman* doctrine, my April 3, 1992, order granting him injunctive relief is GRANTED. However, since it is my view that the Pennsylvania Supreme Court's decision handed down on April 2, 1992, was a final adjudication on Mr. Kessler's request to be placed on the ballot under whatever theory raised, the fact that he here now raises a First Amendment theory, asking the same relief, does not allow me to undo what the Pennsylvania Supreme Court has done. Thus, it appearing that the *Rooker–Feldman* doctrine does apply to Mr. Kessler, I shall AFFIRM by earlier ruling on April 6, 1992, to vacate my April 3, 1992 order.

It is further ORDERED that Mr. Eric Bradway's request for an extension of time from my April 3, 1992 order allowing him until April 6, 1992, to file a petition containing 250 valid signatures with the Bureau, it appearing that Mr. Bradway failed to file the said petition with the required number of signatures in the extended time allowed by the court, his request is DENIED. Equity aids the vigilant, not those who slumber on their rights.

---

1. Particularly will this case serve as a deterrent when one considers the potential effect of the award of counsel fees against future, non-prevailing defendants. *See, e.g., Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). In my view, the failure of the *Rooker–Feldman* doctrine to divest this court of jurisdiction did not ultimately turn on the fact that the members of the Supreme Court of Pennsylvania did not happen to be named defendants in this particular case.